IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PHILADELPHIA METAL TRADES COUNCIL, MTD, AFL-CIO, ET AL., | : : | |
| Plaintiffs | : : | CIVIL ACTION |
| v. | : : | |
| ADMIRAL THAD W. ALLEN, ET AL., | : | NO. 07-145 |
| Defendants. | : | |

**MEMORANDUM AND ORDER**

GENE E.K. PRATTER, J.                                                                                                JUNE 22, 2007

Plaintiffs Philadelphia Metal Trades Council, MTD, AFL-CIO ("PMTC"), and Metal Trades Department, AFL-CIO ("MTD"), (collectively, the "Metal Trades" Plaintiffs), complain pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 702-706 ("APA"), that the United States Coast Guard ruled in an arbitrary and capricious manner when it found that certain of Aker Philadelphia Shipyard, Inc.'s ("Aker") tankers qualified as "built in the United States" for the purposes of Section 27 of the Merchant Marine Act of 1920, 46 App. U.S.C. § 883 (the "Jones Act")[1] and Coast Guard Regulation 46 C.F.R. § 67.97 (2006).

Plaintiffs commenced this action against the Coast Guard, and its Commandant, Admiral Thad W. Allen, as well as the National Vessel Documentation Center ("NVDC"), and its Director, Thomas L. Willis. Upon agreement of all parties, on February 13, 2007, the Court permitted Aker to intervene as a defendant in this suit pursuant to Rule 24(a) of the Federal Rules of Civil Procedure. On April 3, 2007, the Court likewise permitted General Dynamics

---

[1] The provisions of 46 App. U.S.C. § 883 were recodified by Pub. L. 109-304 (Oct. 6, 2006) and are now contained in various sections of Title 46 U.S.C. Chapter 121, Documentation of Vessels (46 U.S.C. §§ 12101-12152) and Title 46 U.S.C. Chapter 551, Coastwise Trade (46 U.S.C. §§ 55101-55121).

NASSCO ("NASSCO") to intervene under Rule 24(a), primarily in light of the broad declaratory and injunctive relief sought by the Plaintiffs.

Presently before the Court is the Motion of the International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, AFL-CIO ("IBB"), and the Local Lodge 1998 of the International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, a/k/a Shipyard Workers Union ("SWU") (collectively, the "Boilermakers") to Intervene as plaintiffs in this suit.  The Court will deny the Motion for the reasons outlined below.

**I.     BACKGROUND**

The Metal Trades Plaintiffs are labor unions comprised, in part, of shipbuilders employed by Aker.  They seek review under the APA of a ruling by the Coast Guard that the Veteran Class MT-46 Product Tankers under construction by Aker will be eligible for operation in United States coastwise trade, despite Aker's incorporation of foreign fabricated equipment, and pre-outfitted and pre-assembled equipment modules and piping systems within the tankers.[2]

The Metal Trades unions claim that as a result of the Coast Guard's eligibility determination, Aker has transferred work historically performed in its Philadelphia shipyard to offshore locations, thereby leaving Aker's fabrication shops idle and excess, and its shipbuilders

---

[2]On April 25, 2006, Aker requested that the Coast Guard issue a Letter Ruling as to whether its Veteran Class MT-46 Tankers would be eligible for coastwise certification once constructed.  On May 24, 2006, the Director of the NVDC issued a favorable Ruling to Aker, which the Plaintiffs appealed on June 22, 2006.  Approximately five months later, on November 15, 2006, the Commandant of the Coast Guard denied the Metal Trades' appeal, finding that notwithstanding the incorporation of the foreign components within Aker's tankers, the tankers satisfy the build requirements of the Jones Act and its implementing regulation, 46 C.F.R. § 67.97.

with significantly less work.  As a result, Plaintiffs seek a declaratory judgment that the Coast Guard ruled in an arbitrary and capricious manner, contrary to the regulatory mandate that commercial tankers are to be "assembled entirely in the United States," 46 C.F.R. § 67.97(b), and the intent of the Jones Act, which, according to Plaintiffs, is to protect the economic and national security of the United States by ensuring that the United States shipyards constitute the only source for construction of commercial vessels.  Additionally, the Metal Trades unions seek a retroactive and prospective injunction.  They request an injunction requiring the Coast Guard to rescind its Ruling regarding the Veteran Class MT-46 tankers, and all other previously issued rulings, and cease to issue any new rulings, based on its interpretation that the laws and regulations for coastwise certification of vessels allow for foreign pre-assembly, pre-outfitting, or fabrication of equipment, piping systems or modules.

      Defendant-Intervenor NASSCO is situated similarly to Aker.  NASSCO received a favorable ruling from the Director of the NVDC regarding its proposed construction of nine commercial tankers for U.S. Shipping Partners ("USS").  NASSCO's contract with USS, valued at $1 billion dollars, is the largest shipbuilding contract in its history.  By the terms of the contract, and under law, NASSCO's tankers must be certified as eligible for United States coastwise trade.  Furthermore, like Aker, NASSCO has entered into subcontracts to purchase design specifications and to fabricate and pre-assemble equipment, modules, and piping systems abroad.  Should the Metal Trades unions prevail in this matter as they propose, the Coast Guard arguably would be required to rescind its approval of NASSCO's tankers, thus implicating NASSCO's contractual obligations and expectations.  Nevertheless, although the sweeping injunctive relief sought by the Metal Trades Plaintiffs poses a threat to NASSCO, NASSCO's

presence in this suit does not expand the scope of discovery, or the scope of the Court's review, to include the administrative record pertaining to NASSCO's own shipbuilding methodology.

The present Applicants for intervention, the Boilermakers, are labor unions affiliated with NASSCO. The IBB is an unincorporated labor organization with thousands of members who work in various industries throughout this country, 10,000 of whom are shipbuilding employees. The SWU, a San Diego, California affiliate of the IBB, is home to 2,300 bargaining-unit shipbuilders employed by NASSCO. The SWU members comprise 70% of the production employees at NASSCO's San Diego shipyard, and, much like the Metal Trades Plaintiffs, the Boilermakers allege that the continued employment of their members is threatened by the Coast Guard's improper, and unprecedented, extension of the Jones Act to permit foreign pre-assembly and fabrication of vessel components. Specifically, by the Boilermakers' calculations, 80 union members will lose their jobs as a result of the NVDC's determination that NASSCO's tankers are eligible for coastwise certification.

Unlike the Metal Trades Plaintiffs, the present Applicants declined to appeal the eligibility determination of the Director of the NVDC. However, despite the failure of the Applicants to avail themselves of an administrative remedy, the Boilermakers wish to participate in, and to expand this suit, to assert its own claims against the government Defendants directly pertaining to the NVDC's Letter Rulings issued to NASSCO. Similar to the Metal Trades Plaintiffs, the proposed intervenors claim that the NVDC arbitrarily and capriciously determined that items "not integral to the hull or superstructure [of NASSCO's tankers] . . . have no bearing on a U.S. build determination," (Compl. ¶ 29(a); Applicant's Proposed Compl. ¶¶ 33(a), 51), and that pre-assembly of modules outside of the United States is permissible under Section

67.97.

Though the Boilermakers initially argued in their written Motion that it is their right to intervene in this suit, during oral argument, they (through their counsel) conceded that intervention of right pursuant to Rule 24(a) is not available to them as a means of access to this litigation.  Thus, the Boilermakers move solely for the Court's permission to intervene pursuant to Federal Rule 24(b).  Both Aker and the government Defendants oppose the intervention, and contend that the Court should not exercise its discretion to permit the Boilermakers to shift the tides of this suit with its wholly unrelated factual claims and burdensome expansion of the record.

## II.    INTERVENTION PURSUANT TO RULE 24(B)

A proposed intervenor may petition for permissive intervention under Federal Rule 24(b). The Court may grant a petition at its discretion, provided that there is a commonality of law or of facts between the applicant's claim and the pre-existing main action.  Fed. R. Civ. P. 24(b)(2). In exercising its discretion to permit intervention, Rule 24(b) requires the Court to consider whether despite the existence of a common question of law or of fact between the proposed claims and the main action, the intervention will "unduly delay or prejudice the adjudication of the rights of the original parties" to the suit.  Fed. R. Civ. P. 24(b); Harris v. Pernsley, 820 F.2d 592, 597 (3d Cir. 1987).

The Court acknowledges that the Boilermakers have satisfied the commonality requirement for permissive intervention.  They have posed a question of law identical to that central to this suit, namely, whether the Coast Guard's interpretation of the Jones Act and its implementing regulation to permit coastwise certification of vessels containing foreign

fabricated and pre-assembled equipment and modules, is permissible under the APA. However, in consideration of the factors germane to judicial economy, including the venue barriers to the entry of the Boilermakers in this suit, intervention is not warranted for several compelling fundamental reasons.

The Court may not properly assert venue over the Boilermakers' new claims pertaining to NASSCO's administrative Rulings pursuant to any of the three avenues provided in 28 U.S.C. § 1391(e).[3] See 6 James Wm. Moore et al., Moore's Federal Practice §6-24.22[3] (3d ed. 2007) (if venue requirements would have prevented joinder of party as a plaintiff under Rule 19, the same issues serve as a barrier to intervention by an applicant seeking permissive intervention). None of the government Defendants reside in this district. See, e.g., Keys v. Dep't of Justice, 2007 WL 137682, at *2 (E.D. Pa. Jan. 16, 2007) (citing Davies Precision Machining, Inc. v. Defense Logistics Agency, 825 F. Supp. 105, 107 (E.D. Pa. 1993)) (for the purposes of venue, federal agencies reside in Washington, D.C., and not in every judicial district where the agencies maintain offices). The events that are the subject of the Boilermakers' claims occurred outside of this district, and finally, the proposed intervenors do not themselves reside in this district.

Moreover, the doctrine of pendent venue does not extend the breadth of the Court's ability to consider the merits of the Boilermakers' new claims. "Pendent venue is an exception to the rule that venue must be established for each cause of action asserted in the complaint."

---

[3]Section 1391(e) sets forth the guidelines for venue in the context of "a civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States." In relevant part, the statute deems venue to be proper in any judicial district in which "(1) a defendant in the action resides, (2) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) the plaintiff resides if no real property is involved in the action." 28 U.S.C. § 1391(e).

High River Ltd. P'ship v. Mylan Labs., Inc., 353 F. Supp. 2d 487, 493 (M.D. Pa. 2005) (citing Phila. Musical Soc'y, Local 77 v. Am. Fed'n of Musicians of the U.S. & Can., 812 F. Supp. 509, 517 n. 3 (E.D. Pa. 1992)).  The Court may extend pendent venue to claims that are otherwise improperly raised before the Court, only when "the claims derive from a common nucleus of operative fact . . . and . . . the exercise of jurisdiction furthers the goals of judicial economy, convenience, and fairness to the litigants."  Beattie v. U.S., 756 F.2d 91, 102-03 (D.C. Cir. 1984).

Clearly then, if the Boilermakers' claims were supported by the same core nucleus of operative facts as those levied by the Metal Trades Plaintiffs – who have properly invoked venue pursuant to § 1391(e)(3) – the Court might extend venue to the Boilermakers.  However, this is not the case.  The facts supporting the Boilermakers claims are derived entirely from transactions between NASSCO and the government, unique to NASSCO's proprietary shipbuilding methodologies, and memorialized in an administrative record other than the one before the Court.  Additionally, the exercise of pendent venue as a means to permit additional parties' entry into a suit is uncommon; the "novel concept" of pendent venue "is generally applied when the causes of action have identical parties and proofs."  Lomanno v. Black, 285 F. Supp. 2d 637, 641 (E.D. Pa. 2003) (quoting Christian Dalloz, S.A. v. Holden, 1990 WL 121342, at *2 n. 2 (E.D. Pa. Aug. 20, 1990)).[4]

---

[4]Even if the Court might properly permit the Boilermakers to dodge the venue hurdle, their presence would nevertheless unduly delay and burden this suit with additional questions of law that are better suited for separate adjudication.  Aside from the customary delay caused by the addition of a party, e.g., the additional time required for briefing, and, in this case, the addition of an entire second administrative record for the Court's review, the Boilermakers' claims raise issues of administrative exhaustion that would otherwise be absent from this suit. The Boilermakers did not avail themselves of the opportunity to appeal to the Commandant for

In light of the unavoidable venue bar to the Boilermakers' new claims, the Boilermakers offer to concede those claims pertaining directly to the Coast Guard's Rulings on NASSCO's tankers, and instead participate in this suit as "advocates" of the existing claims pertaining to Aker's tankers. However, this concession yields an unfavorable result to the Boilermakers, inasmuch as it renders their presence in this suit entirely unnecessary.

In <u>Hoots v. Com. of Pa.</u>, 672 F.2d 1133, 1135-1136 (3d Cir. 1982) (<u>quoting</u> Fed. R. Civ. P. 24(b)), our court of appeals found that "where the interests of an applicant in every manner match those of an existing party and the party's representation is deemed adequate, the district court is well within its discretion in deciding that the applicant's contributions to the proceedings would be superfluous and that any resulting delay would be 'undue.'" Here, the Boilermakers' interest is identical to the interest of the Metal Trades Plaintiffs, that is, an interest in preventing workforce reduction as a result of the Coast Guard's interpretation of the Jones Act and its implementing regulation. The Boilermakers have articulated no other interest or goal.

Furthermore, the adequacy of the Metal Trades' representation of this common interest is clear. Representation is deemed adequate unless an applicant can show one of the following three criteria: (1) that the applicant's interests, though similar to those of a party to the suit, diverge sufficiently that the existing party cannot devote proper attention to the applicant's interests; or (2) there is collusion between the representative party and the opposing party; or (3)

---

review the Rulings issued by the NVDC, and, instead, allowed NASSCO's Letter Rulings to remain unchallenged for approximately one year until their proposed intervention here. Thus, whether the Boilermakers have properly exhausted their claims would generate a distracting and perhaps complicated issue for the Court to consider. Moreover, even if that issue was without merit, the intervention of the Boilermakers would ostensibly incite additional equitable defenses otherwise absent from this case, such as, to name just one, laches.

that the representative party is not diligently prosecuting the suit. Alexander v. Rendell, 2007 WL 917073, at *17 (W.D. Pa. Mar. 23, 2007) (citing Brody v. Spang, 957 F.2d 1108, 1123 (3d Cir. 1992)).

Though the Boilermakers do not venture to assert inadequacy in the form of collusion or non-prosecution, they suggest that the Metal Trades Plaintiffs will not devote proper attention to their pursuits, largely as a result of the organizational differences between the unions, such as the differences in the management and structure, and the collective bargaining agreements in place. Perhaps this argument would be tenable if the Metal Trades Plaintiffs were party to a lawsuit in which they bore the responsibility to prosecute claims directly related to NASSCO's tankers, instead of claims relating to the tankers of their own shipyard affiliate. However, as it is the case that the Boilermakers' single opportunity to participate in this suit is in support not of its own unique claims, but instead in support of the Metal Trades' claims, it cannot be said that these two entities have divergent interests. Even if the differences between the unions might cause each to prosecute the claims in a different manner, or with a distinct style or strategy, any such concern is allayed by the telling circumstance that the Boilermakers have hired the very same counsel as represent the Metal Trades Plaintiffs to represent them in this suit. See Pa. R. Prof'l Conduct 1.7.[5] Aside from the aesthetic benefit of symmetry, and the convenience to the Boilermakers

---

[5] It is also highly doubtful that the Boilermakers have standing – Article III, prudential, or otherwise – to challenge Aker's Letter Rulings. In Alexander, 2007 WL 917073, at *3-5, the court noted that while it remains unsettled in this circuit whether standing is a requirement for permissive intervention, in several cases, our court of appeals has given an indication that standing is necessary for intervention. See, e.g., Pansy v. Borough of Stroadsburg, 23 F.3d 772, 777 (3d Cir. 1994) ("The appellees have not challenged the Newspapers' standing in this appeal. Nevertheless, we are obliged to consider whether the Newspapers have standing to intervene in this action . . ."). But, even if the Boilermakers are not wholly without standing to pursue the Metal Trades' claims, at the very least, the presence of this additional legal issue, and the delay

that intervention would present, there are no factors counseling in favor of granting their request for intervention. That the Boilermakers have asserted a question of law in common with that central to this suit is a necessary, but insufficient, single basis for granting intervention, particularly in consideration of the redundancy of their presence without their unique claims, and the delay they will necessarily cause.

### III.   CONCLUSION

Having found no grounds for the Court to find proper venue here for the Boilermakers' proposed claims pertaining to NASSCO's tankers, and no reason, despite the existence of a common question of law pertinent to both the Boilermakers and the Metal Trades unions, to burden this litigation with the addition of a party better suited as *amicus curiae* or in another, even less formal consultative role, and in light of the fact that Boilermakers are not precluded by this ruling from filing a separate suit in the proper venue regarding their claims, the Court will deny the Boilermakers' motion to intervene pursuant to Rule 24(b), and decline to permit the Boilermakers to intervene as plaintiffs in this matter.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

---

that will ensue in its determination, further supports the Court's denial of permissive intervention by the Boilermakers.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PHILADELPHIA METAL TRADES COUNCIL, MTD, AFL-CIO, ET AL., | : : | |
| Plaintiffs | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| ADMIRAL THAD W. ALLEN, ET AL., | : | NO. 07-145 |
| Defendants. | : | |

### ORDER

**AND NOW**, this 22nd day of June 2007, having considered the Motion of the International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, AFL-CIO, and the Local Lodge 1998 of the International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, a/k/a Shipyard Workers Union to Intervene (Docket No. 36) as Plaintiffs in this suit, the Responses of the government Defendants and Aker Philadelphia Shipyard, Inc. (Docket Nos. 37, 38), and the Reply thereto (Docket No. 40), **IT IS HEREBY ORDERED** that the Motion (Docket No. 36) is **DENIED**.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE